IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEROME JUNIOR WASHINGTON, | No. 4:22-CV-01858 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| LIEUTENANT MYERS, *et al.*, | |
| Defendants. | |

MEMORANDUM OPINION

MAY 15, 2023

Plaintiff Jerome Junior Washington, a serial *pro se* litigant who is well known to this Court, filed the instant civil rights lawsuit while incarcerated at the State Correctional Institute, Rockview (SCI Rockview). Washington's *pro se* Section 1983[1] action appears to assert five constitutional claims. Because Washington fails to state a claim against any Defendant, the Court will dismiss the complaint pursuant to 28 U.S.C. § 1915A(b)(1) but will grant leave to amend.

I.   STANDARDS OF REVIEW

Courts are statutorily obligated to review, "as soon as practicable," *pro se* prisoner complaints targeting governmental entities, officers, or employees.[2] One

---

[1] 42 U.S.C. § 1983. Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

[2] *See* 28 U.S.C. § 1915A(a).

basis for dismissal at the screening stage is if the complaint "fails to state a claim upon which relief may be granted[.]"[3] This language closely tracks Federal Rule of Civil Procedure 12(b)(6). Accordingly, courts apply the same standard to screening a *pro se* prisoner complaint for sufficiency under Section 1915A(b)(1) as they utilize when resolving a motion to dismiss under Rule 12(b)(6).[4]

In deciding a Rule 12(b)(6) motion to dismiss, courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[5] The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff.[6] In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.[7]

---

[3] *Id.* § 1915A(b)(1).
[4] *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 109-10 & n.11 (3d Cir. 2002); *O'Brien v. U.S. Fed. Gov't*, 763 F. App'x 157, 159 & n.5 (3d Cir. 2019) (per curiam) (nonprecedential); *cf. Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000).
[5] *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996).
[6] *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008).
[7] *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry.[8] At step one, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim."[9] Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded.[10] Finally, the court must review the presumed-truthful allegations "and then determine whether they plausibly give rise to an entitlement to relief."[11] Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[12]

Because Washington proceeds *pro se*, his pleadings are to be liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]"[13] This is particularly true when the *pro se* litigant, like Washington, is incarcerated.[14]

## II.   DISCUSSION

At the time Washington filed his complaint, he was incarcerated at SCI Rockview. He is currently incarcerated at SCI Forest. Washington's complaint

---

[8]   *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotation marks omitted) (footnote omitted).
[9]   *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (alterations in original)).
[10]  *Id.* (quoting *Iqbal*, 556 U.S. at 679).
[11]  *Id.* (quoting *Iqbal*, 556 U.S. at 679).
[12]  *Iqbal*, 556 U.S. at 681.
[13]  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citations omitted).
[14]  *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (citation omitted).

attempts to assert five different claims against defendant Lieutenant Myers, a corrections officer at SCI Rockview.

In his first claim, Washington alleges that, on or around February 16, 2022, he was placed into a dirty cell ("GA-1") without a mattress, blanket, or bedroll.[15] He avers that he spent one night in these conditions and informed Myers—who was not involved in the cell placement—about the conditions the following day but was met with deliberate indifference.[16]

Washington next alleges that he is being overcharged for outgoing mail.[17] He asserts that he is being "deliberately over charged [sic] to [his] inmate account" at a rate of "3 to 10 times the normal amount of outgoing mail."[18] Washington provides no details about the allegedly excessive postage charges, when they occurred, what mailings he was overcharged for, or what type of purported constitutional claim is implicated by these facts. He simply states that, on October 25, 2021, he talked to a "mail man" about the issue and that Myers "handle [sic] all

---

[15] Doc. 1 at 3-6. Because Washington's complaint is handwritten, single-spaced, and lacking the appropriate 1-inch margins, it is impossible to read or utilize the paragraph numbers in his pleading, so the Court will cite to the CM/ECF electronic page numbers of Washington's complaint.

[16] Id. at 4-6. In his complaint, Washington asserts that on February 17, Myers spoke with Washington and explained that video footage showed that Washington had refused a mattress and bedroll on February 16. See id. at 4. Washington disputes that he was offered and refused these items. Id.

[17] See id. at 6-7.

[18] See id. at 6.

4

outgoing . . . cash slip outgoing [sic] delivery herein [sic]."[19]  It is unclear what Washington means by this statement about Myers.

In his third claim, Washington appears to assert that the prison lost his personal property (an envelope of artwork) around March or April 2022.[20]  He claims that the property was given to "CO Anna who said he gave it to Lieutenant Myers" and that Myers told Washington that he "sent it to the mail room on March 28, 2022."[21]  Washington alleges that the package never reached its intended destination.[22]  He equates this situation to a "due process clause" violation for "destruction of property."[23]

In his fourth claim, Washington asserts that he sent legal mail to the United States District Court for the Western District of Pennsylvania in December 2021 that apparently was not received by that court.[24]  According to Washington, one of his civil cases in the Western District was "dismissed" and closed on June 10, 2022, as a result.[25]  It is unclear what Washington is alleging in this section of his complaint.  He closes this portion of his pleading with the following vague

---

[19] *See id.*
[20] *See id.* at 7.
[21] *Id.*
[22] *Id.*
[23] *Id.*
[24] *Id.* at 8.
[25] *Id.*

statement: "Lt. Myers retaliatory conduct destruction of legal documentary evidence."[26]

Washington's final allegations appear to raise another conditions-of-confinement claim. He asserts that every day from October 2021 through July 2022 "multiple inmates used hard items to bang on their steel toilets" and "screamed and yelled" during the 6:00 a.m. to 2:00 p.m. shift.[27] Washington claims that, because of this noise, he only got "4 hours of sleep a day" during this time.[28] He avers that Myers has not done anything to correct this issue.[29]

For the reasons that follow, Washington fails to state a claim upon which relief may be granted in any of his Section 1983 allegations. The Court will address Washington's pleading deficiencies in turn.

### A.   Personal Involvement

It is well established that, in Section 1983 actions, liability cannot be "predicated solely on the operation of *respondeat superior*."[30] Rather, a Section 1983 plaintiff must aver facts that demonstrate "the defendants' personal involvement in the alleged misconduct."[31] Personal involvement can include direct

---

[26] *Id.*
[27] *Id.*
[28] *Id.* at 9.
[29] *Id.*
[30] *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (affirming same principle in *Bivens* context).
[31] *Dooley*, 957 F.3d at 374 (citing *Rode*, 845 F.2d at 1207).

wrongful conduct by a defendant, but it can also be demonstrated through allegations of "personal direction" or of "actual knowledge and acquiescence"; however, such averments must be made with particularity.[32]

Washington does not include any allegations that would establish personal involvement by superintendent Salamon in the purported constitutional violations. Salamon's name, in fact, appears only in the caption and the defendant-identification section of Washington's complaint.[33] Because Washington has failed to allege any personal involvement whatsoever by Salamon, the Court must dismiss any Section 1983 claim against her.

### B. Conditions of Confinement Claims

"[T]he Constitution does not mandate comfortable prisons, and prisons . . . which house persons convicted of serious crimes[] cannot be free of discomfort."[34] Nevertheless, the state cannot subject an inmate to cruel and unusual punishment or "inhumane treatment," such as deprivation of "identifiable human need[s]" like "food, clothing, shelter, medical care, and reasonable safety[.]"[35] To prevail on an Eighth Amendment conditions-of-confinement claim, a plaintiff must show both objective and subjective elements.[36] Objectively, the prisoner must demonstrate

---

[32] *Id.* (quoting *Rode*, 845 F.2d at 1207).
[33] *See* Doc. 1 at 1-3.
[34] *Thomas v. Tice*, 948 F.3d 133, 139 (3d Cir. 2020) (second alteration in original) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)).
[35] *See Helling v. McKinney*, 509 U.S. 25, 32 (1993) (citation omitted).
[36] *See Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 226 (3d Cir. 2015)

that "the prison official deprived the prisoner of the minimal civilized measure of life's necessities," often referred to as a "sufficiently serious" deprivation.[37] Subjectively, the prisoner must show that "the prison official acted with deliberate indifference" to the prisoner's "health or safety."[38] Deliberate indifference means that the defendant "acted or failed to act despite having knowledge that her actions or inaction, as the case may be, would subject the inmate to a substantial risk of serious harm."[39]

In Washington's first conditions-of-confinement claim, he alleges that he spent a single night in a dirty cell without a mattress, bedroll, or blanket. These allegations fail to state a sufficiently serious deprivation. Numerous district courts and courts of appeals have held that temporary denial of a mattress, even for multiple days and in combination with other deprivations (significantly worse than those Washington alleges), does not amount to a cognizable Eighth Amendment violation.[40] Moreover, the duration of the deprivation is a critical factor in the

---

[37] *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 843 (1994); *Wilson*, 501 U.S. at 297).
[38] *Id.* (citing *Farmer*, 511 U.S. at 834).
[39] *Id.* at 227 (citing *Farmer*, 511 U.S. at 842).
[40] *See Freeman v. Miller*, 615 F. App'x 72, 77-78 (3d Cir. 2015) (nonprecedential) (seven days without mattress, shower, soap, recreation, or toilet paper due to suicide risk not unconstitutional); *Adderly v. Ferrier*, 419 F. App'x 135, 139 (3d Cir. 2011) (nonprecedential) (seven days without clothing, toiletries, mattress, and shower was harsh but not a deprivation of life's necessities); *Stephens v. Cottey*, 145 F. App'x 179, 181 (7th Cir. 2005) (nonprecedential) (three days without a mattress and having to sleep on a metal bedframe did not violate Eighth Amendment); *Williams v. Delo*, 49 F.3d 442, 444 (8th Cir. 1995) (four days without clothing, mattress, or bedding not Eighth Amendment violation); *Maldanado v. Dep't of Corr.*, No. 1:13-CV-2249, 2017 WL 3034768, at *3 (M.D. Pa. July 18, 2017) (four or five days without mattress not a cognizable conditions-of-confinement claim); *Milhouse v. Gee*,

conditions-of-confinement analysis,[41] and here a single night without a mattress or blanket further undercuts Washington's claim that prison officials violated his Eighth Amendment rights.

Washington's initial conditions-of-confinement claim likewise fails because he has not adequately pled that Myers had any knowledge of these conditions when they occurred and was deliberately indifferent to Washington's health or safety. Washington himself admits that he did not discuss the conditions with Myers until the following day, and that Myers informed him that he believed Washington had been offered (and rejected) a mattress and bedroll. Thus, Washington's first Eighth Amendment claim fails both the objective and subjective elements of a conditions-of-confinement claim.

In his second conditions-of-confinement claim, Washington alleges that other inmates in the BMU were making continuous noise during the 6 a.m. to 2 p.m. shift and disrupting his sleep. Washington's claim is both implausible and legally insufficient. First, the Court finds it implausible that corrections officers assigned to the BMU would allow "multiple inmates" to continuously bang "hard

---

No. 1:09-CV-2134, 2011 WL 3627414, at *12 (M.D. Pa. Aug. 17, 2011) (two weeks without a mattress did not violate Eighth Amendment); *see also Coleman v. Hodges*, No. 18-CV-1152, 2018 WL 6618459, at *6-7 (W.D. Pa. Nov. 30, 2018) (collecting cases regarding constitutional rights of pretrial detainees and denial of mattress).

[41] *See Thomas v. Tice*, 948 F.3d 133, 139 (3d Cir. 2020) (stressing that "*duration*" of confinement in a dry cell was crucial consideration in Eighth Amendment conditions-of-confinement claim).

items" on their steel toilets and to "scream[] and yell[]" for 8 hours a day every day for 10 months straight without taking some sort of action to remedy the purported cacophony. Washington's allegations in this regard appear hyperbolic.

Even if the allegations are taken as true, they do not state a constitutional violation. Washington contends that the other inmates' noises are disrupting his sleep, but he alleges that the noise is being made during the 6 a.m. to 2 p.m. daytime shift (apparently when Myers is scheduled to work). Additionally, allegations similar to those Washington raises have been found to be insufficient to implicate the Eighth Amendment.[42] Finally, this claim also fails the subjective prong because Washington has not pled that Myers was aware of these noise-related conditions and their alleged effect on Washington and was deliberately indifferent to them. Consequently, both of Washington's conditions-of-confinement claims must be dismissed for failure to state a claim.

### C. Fourteenth Amendment Due Process Claims

In his second and third claims, respectively, Washington alleges that he is being overcharged for postage and that prison officials lost artwork that was to be mailed to an outside entity. It is unclear what type of constitutional tort claim or

---

[42] *See Whitney v. Wetzel*, 649 F. App'x 123, 127 (3d Cir. 2016) (nonprecedential) (finding that allegedly "intolerable" noise caused by other inmates "banging on toilets and sinks," while perhaps "irritating," was not sufficient to implicate Eighth Amendment); *Hutchinson v. Northampton Cnty. Prison*, No. 22-cv-2652, 2023 WL 205103, at *6 (E.D. Pa. Jan. 17, 2023) (finding that allegations of inmates "scream[ing] and bang[ing] on the gates [un]til 4am" and causing sleep disruption insufficient to state an Eighth Amendment claim).

claims Washington is attempting to assert. As best the Court can ascertain, Washington is trying to raise a Fourteenth Amendment claim of deprivation of property without due process of law.[43] This constitutional tort, however, has significantly limited application. Most acutely, such a due process claim is unavailable when "adequate state post-deprivation remedies are available."[44]

Washington's complaint is silent as to whether adequate state post-deprivation remedies exist for the allegedly excessive postage charges or loss of his artwork. However, the Court notes that state tort law likely provides a remedy for claims like those Washington is asserting.[45] The United States Court of Appeals for the Third Circuit has also held that the prison grievance process constitutes an adequate post-deprivation remedy for claims like those asserted here, even if the plaintiff disagrees with the results.[46] Thus, if Washington is attempting to raise Fourteenth Amendment deprivation-of-property claims with respect to allegedly excessive postage or lost artwork, those claims fail as a matter of law and must be dismissed.

---

[43] *See Hudson v. Palmer*, 468 U.S. 517 530, 533 (1984).
[44] *Id.* at 533.
[45] *See* 42 PA. CONS. STAT. § 8522(a), (b)(3) (waiving state statutory sovereign immunity for negligent acts related to the "care, custody or control of personal property in the possession or control of Commonwealth parties"); *Cruz v. SCI-SMR Dietary Servs.*, 566 F. App'x 158, 160 (3d Cir. 2014) (nonprecedential) (noting that district court correctly dismissed Fourteenth Amendment due process property deprivation claim due to existence of state post-deprivation remedies); *see also Shonberger v. Oswell*, 530 A.2d 112, 114 (Pa. Super. Ct. 1987) (explaining intentional tort of conversion).
[46] *See Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 422 (3d Cir. 2000).

### D. First Amendment Retaliation Claim

Washington's final claim regarding legal mail is equally difficult to decipher. As best the Court can discern, Washington is attempting to allege that Myers retaliated against him by failing to send Washington's legal mail to the Western District.

To state a First Amendment retaliation claim, a prisoner must allege that (1) "he was engaged in constitutionally protected conduct," (2) he suffered an "adverse action" by prison officials sufficient to deter a person of ordinary firmness from exercising his First Amendment rights, and (3) the inmate's protected conduct was a "substantial or motivating factor" in the prison officials' decision to take the adverse action.[47]

Simple recitation of the elements of a retaliation cause of action exposes the deficiencies with Washington's undeveloped claim. He does not allege that he was engaged in constitutionally protected conduct, nor does he establish causation—*i.e.*, that his protected conduct was a substantial or motivating factor in Myers'

---

[47] *Wisniewski*, 857 F.3d at 156 (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (quoting *Rauser*, 241 F.3d at 333).

decision to take the purported adverse action.[48] Washington's claim of retaliation against Myers, therefore, fails to state a claim for relief and must be dismissed.

### E. Leave to Amend

Generally, "plaintiffs who file complaints subject to dismissal under [the Prison Litigation Reform Act of 1995] should receive leave to amend unless amendment would be inequitable or futile."[49] Washington will be granted limited leave to amend in the event that he can plead facts that would plausibly state a claim for relief. Leave to amend will be denied as futile with regard to his initial conditions-of-confinement claim concerning the events of February 16 and 17, 2022. That Eighth Amendment claim is fatally deficient—primarily due to the absence of a sufficiently serious deprivation—and cannot be salvaged by any sort of amendment. Likewise, Washington's Fourteenth Amendment deprivation-of-property claims will be dismissed with prejudice. Washington cannot state a property-deprivation claim because adequate state post-deprivation remedies were available to him.

If Washington chooses to file an amended complaint in conformity with this Memorandum, it should be a stand-alone document, complete in itself and without reference to any previous pleadings. The amended complaint should set forth

---

[48] The Court expresses no opinion as to whether failure to send legal mail constitutes an "adverse action" sufficient to deter a person of ordinary firmness from exercising his First Amendment rights.
[49] *Grayson*, 293 F.3d at 114.

Washington's claims in short, concise, and plain statements, and in sequentially numbered paragraphs. Washington must leave one-inch margins on all four sides of his pleading.[50] He *may not* include claims that have been dismissed with prejudice. Washington must also name proper defendants, specify the offending actions taken by a particular defendant, sign the amended complaint, and indicate the nature of the relief sought. Failure to comply with these instructions will result in the Court striking the amended pleading.

### III. CONCLUSION

Based on the foregoing, the Court will dismiss Washington's complaint pursuant to 28 U.S.C. § 1915A(b)(1) because it fails to state a claim upon which relief may be granted. Washington, if he is able, may file an amended complaint in accordance with this Memorandum. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

50   *See* LOCAL RULE OF COURT 5.1