## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JEROME JUNIOR WASHINGTON,

       Plaintiff,

  v.

LIEUTENANT MYERS,

       Defendant.

No. 4:22-CV-01858

(Chief Judge Brann)

## MEMORANDUM OPINION

**AUGUST 15, 2023**

Plaintiff Jerome Junior Washington, a serial *pro se* litigant who is well known to this Court, filed the instant Section 1983[1] lawsuit while incarcerated at the State Correctional Institution, Rockview (SCI Rockview). Washington's initial complaint was dismissed for failure to state a claim upon which relief may be granted. He was given limited leave to amend. Washington's amended complaint again fails to state a claim for relief, so the Court will dismiss this case under 28 U.S.C. § 1915A(b)(1).

## I.   BACKGROUND

At the time Washington filed his complaint, he was incarcerated at SCI Rockview. He is currently incarcerated at SCI Forest.[2] Washington's original

---

[1]  42 U.S.C. § 1983. Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

[2]  *See* Doc. 11 ¶ 10.

complaint asserted five constitutional tort claims against defendant Lieutenant Myers, a corrections officer at SCI Rockview.[3]  As best the Court could discern, Washington was attempting to assert two Eighth Amendment conditions-of-confinement claims, two Fourteenth Amendment deprivation-of-property claims, and a First Amendment retaliation claim.[4]

The Court screened and dismissed Washington's complaint pursuant to 28 U.S.C. § 1915A.[5]  Washington's first conditions-of-confinement claim (which involved spending a night without a mattress or bedroll) and his property-deprivations claims were dismissed with prejudice under Section 1915A(b)(1), as they were legally insufficient and could not be cured by amendment.[6]  The Court granted Washington leave to amend with regard to his second conditions-of-confinement claim (concerning noisy conditions in the BMU) and his retaliation claim.[7]

Washington filed an amended complaint, which is presently before the Court for Section 1915A screening.  Washington's amended complaint likewise fails to state a claim upon which relief may be granted.

---

[3]   Washington also sued "Superintendent Salamon," the superintendent of SCI Rockview, but failed to include any allegations establishing Salamon's personal involvement in the purported constitutional violations.  *See* Doc. 1 at 2; Doc. 9 at 6-7.  Accordingly, the claims against Salamon were dismissed under Section 1915A(b)(1).  *See* Doc. 9 at 7.  Washington does not name Salamon in his amended complaint.  *See* Doc. 11 ¶¶ 13-14.

[4]   *See* Doc. 9 at 4-6.

[5]   *See generally* Docs. 9, 10.

[6]   *See* Doc. 9 at 8-9, 10-11, 13, 14.

[7]   *See id.* at 13-14.

## II.    STANDARDS OF REVIEW

Courts are statutorily obligated to review, "as soon as practicable," *pro se* prisoner complaints targeting governmental entities, officers, or employees.[8]  One basis for dismissal at the screening stage is if the complaint "fails to state a claim upon which relief may be granted[.]"[9]  This language closely tracks Federal Rule of Civil Procedure 12(b)(6).  Accordingly, courts apply the same standard to screening a *pro se* prisoner complaint for sufficiency under Section 1915A(b)(1) as they utilize when resolving a motion to dismiss under Rule 12(b)(6).[10]

In deciding a Rule 12(b)(6) motion to dismiss, courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[11]  The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff.[12]  In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to

---

[8]   *See* 28 U.S.C. § 1915A(a).
[9]   *Id.* § 1915A(b)(1).
[10]  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 109-10 & n.11 (3d Cir. 2002); *O'Brien v. U.S. Fed. Gov't*, 763 F. App'x 157, 159 & n.5 (3d Cir. 2019) (per curiam) (nonprecedential); *cf. Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000).
[11]  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996).
[12]  *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008).

3

a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.[13]

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry.[14]   At step one, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim."[15]   Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded.[16]   Finally, the court must review the presumed-truthful allegations "and then determine whether they plausibly give rise to an entitlement to relief."[17] Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[18]

Because Washington proceeds *pro se*, his pleadings are to be liberally construed and his amended complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]"[19]   This is particularly true when the *pro se* litigant, like Washington, is incarcerated.[20]

---

[13]   *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

[14]   *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotation marks omitted) (footnote omitted).

[15]   *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (alterations in original)).

[16]   *Id.* (quoting *Iqbal*, 556 U.S. at 679).

[17]   *Id.* (quoting *Iqbal*, 556 U.S. at 679).

[18]   *Iqbal*, 556 U.S. at 681.

[19]   *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citations omitted).

[20]   *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (citation omitted).

## III.   DISCUSSION

Washington's amended complaint appears to assert an Eighth Amendment conditions-of-confinement claim and a First Amendment retaliation claim against Myers.[21]  It is conceivable that Washington is also attempting to raise a First and Fourteenth Amendment access-to-courts claim.  None of Washington's claims can withstand Rule 12(b)(6) scrutiny.  The Court will address Washington's pleading deficiencies in turn.

### A.   Eighth Amendment Conditions of Confinement

"[T]he Constitution does not mandate comfortable prisons, and prisons . . . which house persons convicted of serious crimes[] cannot be free of discomfort."[22] Nevertheless, the state cannot subject an inmate to cruel and unusual punishment or "inhumane treatment," such as deprivation of "identifiable human need[s]" like "food, clothing, shelter, medical care, and reasonable safety[.]"[23]  To prevail on an Eighth Amendment conditions-of-confinement claim, a plaintiff must show both objective and subjective elements.[24]  Objectively, the prisoner must demonstrate that "the prison official deprived the prisoner of the minimal civilized measure of life's necessities," often referred to as a "sufficiently serious" deprivation.[25]

---

[21]   *See* Doc. 11 ¶¶ 15-16.

[22]   *Thomas v. Tice*, 948 F.3d 133, 139 (3d Cir. 2020) (second alteration in original) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)).

[23]   *See Helling v. McKinney, 509 U.S. 25, 32 (1993) (citation omitted).*

[24]   *See Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 226 (3d Cir. 2015)

[25]   *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 843 (1994); *Wilson*, 501 U.S. at 297).

Subjectively, the prisoner must show that "the prison official acted with deliberate indifference" to the prisoner's "health or safety."[26]  Deliberate indifference means that the defendant "acted or failed to act despite having knowledge that her actions or inaction, as the case may be, would subject the inmate to a substantial risk of serious harm."[27]

Washington devotes four paragraphs in his amended complaint to his conditions-of-confinement claim.[28]  He avers that he resided in SCI Rockview's Behavior Management Unit (BMU) due to his "serious mental illness[es]."[29]  He alleges that within the BMU (or in the same area as the BMU) were other restrictive housing units containing unruly prisoners who were involved in "gang war" and who would "bang on" their doors and steel toilets and "rap & sing" with their televisions turned up loud.[30]  Washington alleges that during "some nights [and] mornings" he was unable to sleep due to the noise from the other inmates.[31]  Washington additionally asserts that the lack of sleep affected his ability to complete his legal work, but admits that he was able to "nap" at times.[32]

---

[26]   *Id.* (citing *Farmer*, 511 U.S. at 834).
[27]   *Id.* at 227 (citing *Farmer*, 511 U.S. at 842).
[28]   *See* Doc. 11 ¶¶ 36-40.
[29]   *Id.* ¶¶ 36-37.
[30]   *Id.* ¶¶ 39-40.
[31]   *Id.* ¶ 40.
[32]   *Id.*

Washington's Eighth Amendment claim fails both the objective and subjective prongs.  First, noise complaints similar to those Washington raises have been found to be insufficient to implicate the Eighth Amendment.[33]  Washington does not specify when he was unable to sleep from the noise, nor does he indicate how often this alleged sleep disruption would occur.  He also admits that he was able to nap.  Accordingly, Washington's allegations do not state a sufficiently serious deprivation.

Even if Washington had identified a sufficiently serious deprivation, his claim once again fails the subjective prong.  He has not pled that Myers (or any other prison official, for that matter) was aware of these noise-related conditions or their alleged impact on Washington and acted with deliberate indifference. Nowhere in Washington's amended complaint does he allege that he raised his concerns to Myers, that Myers otherwise had knowledge of the noise, or that Myers was deliberately indifferent to the purportedly unconstitutional conditions. Consequently, Washington's conditions-of-confinement claim again must be dismissed for failure to state a claim.

---

[33]   *See Whitney v. Wetzel*, 649 F. App'x 123, 127 (3d Cir. 2016) (nonprecedential) (finding that allegedly "intolerable" noise caused by other inmates "banging on toilets and sinks," while perhaps "irritating," was not sufficient to implicate Eighth Amendment); *Hutchinson v. Northampton Cnty. Prison*, No. 22-cv-2652, 2023 WL 205103, at *6 (E.D. Pa. Jan. 17, 2023) (finding that allegations of inmates "scream[ing] and bang[ing] on the gates [un]til 4am" and causing sleep disruption insufficient to state an Eighth Amendment claim).

## B.    First Amendment Retaliation Claim

To state a *prima facie* First Amendment retaliation claim, a prisoner must allege that (1) "he was engaged in constitutionally protected conduct," (2) he suffered an "adverse action" by prison officials sufficient to deter a person of ordinary firmness from exercising his First Amendment rights, and (3) the inmate's protected conduct was a "substantial or motivating factor" in the prison officials' decision to take the adverse action.[34]

Washington's retaliation claim is hopelessly confused.   At times, Washington appears to allege that Myers unlawfully retaliated against him by "delay[ing]" and "destroying" his legal mail.[35]  The Court assumes—without deciding—that delaying or destroying legal mail could rise to the level of an adverse action.  But this is not the only adverse action Washington discusses, nor does Washington adequately plead causation.

For example, in one section of his amended complaint, Washington asserts that Myers retaliated against him because he filed "grievances against SCI Rockview prison officials."[36]  While filing a grievance is protected conduct,[37] Washington does not state against whom the grievances were filed or why such grievances would motivate Myers to retaliate against him.  Courts in this district

---

[34]  *Wisniewski*, 857 F.3d at 156 (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (quoting *Rauser*, 241 F.3d at 333).
[35]  *See* Doc. 11 ¶¶ 35, 40.
[36]  *See id.* ¶ 35.
[37]  *See Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016) (citation omitted).

have consistently rejected retaliation claims against one defendant based on a grievance filed against a different defendant,[38] as such conclusory allegations do not suffice to show causation or knowledge of the protected conduct.

In another section of his amended complaint, Washington appears to assert that Myers retaliated against him by demoting his BMU phase for "filing grievances."[39] This is a different adverse action that is not discussed anywhere else in Washington's pleadings, and again it contains the generic protected conduct of "filing grievances," from which causation cannot be inferred.

In another place, Washington alleges that he filed a grievance (# 950682) against Myers for "making [his] . . . grievance frivolous"—which the Court presumes means that Myers determined one of Washington's many grievances to be frivolous—in retaliation for "filing grievances [and] lawsuits on prison officials."[40] This is yet a *different* adverse action[41] and again relies on unspecified "grievances" and "lawsuits," which is insufficient to show causation. Furthermore, the Court finds this portion of Washington's pleading to be contradictory.

---

[38] *See, e.g.*, *Kendrick v. Hann*, No. 1:19-cv-01642, 2021 WL 2914986, at *9 (M.D. Pa. July 12, 2021); *Murray v. Smithbower*, No. 1:17-cv-0127, 2021 WL 1103524, at *7 (M.D. Pa. Mar. 23, 2021); *Horan v. Collins*, No. 1:13-cv-00140, 2016 WL 5030468, at *6 (M.D. Pa. Aug. 8, 2016); *Victor v. Lawler*, No. 3:07-cv-2058, 2010 WL 5014555, at *5 (M.D. Pa. Dec. 3, 2010); *Royster v. Beard*, No. 1:06-cv-0842, 2008 WL 2914516, at *6 (M.D. Pa. July 24, 2008) (concluding that plaintiff failed to satisfy the causal connection for his retaliation claim against defendant because previous grievance did not name or impact that defendant).

[39] Doc. 11 ¶ 34(i).

[40] *Id.* ¶ 34(ii).

[41] The Court expresses no opinion as to whether rejecting a grievance or finding a grievance to be "frivolous" rises to the level of an adverse action for a First Amendment retaliation claim.

Washington maintains that he filed grievance 950682 against Myers, and then asserts that Myers was assigned to review the grievance under DC-ADM 804.[42] But DC-ADM 804 specifically bars prison officials from reviewing grievances if they are named or involved in the grievance at issue.[43]

Consequently, the Court is simply unable to determine what Washington is alleging with regard to his retaliation claim against Myers. And none of his assertions plausibly plead causation. Therefore, the claim again must be dismissed for failure to state a claim.

## C.    First and Fourteenth Amendment Access to Courts

Although not explicitly stated, it is possible that Washington is alleging an access-to-courts claim. Under the First and Fourteenth Amendments to the United States Constitution, "prisoners retain a right of access to the courts."[44] Inmates, however, may only proceed on access-to-courts claims in two situations: "challenges (direct or collateral) to their sentences and conditions of confinement."[45] To adequately plead an access-to-courts claim that is backward-looking in nature,[46] the prisoner must allege "(1) that they suffered an 'actual

---

[42] *Id.* ¶ 34(ii)-(iv).

[43] COMMW. OF PA., PA. DEP'T OF CORR., *Policy Statement* DC-ADM 804 § 1(C)(3) (2015).

[44] *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008) (citing *Lewis v. Casey*, 518 U.S. 343, 346 (1996)).

[45] *Id.* (citing *Lewis*, 518 U.S. at 354-55).

[46] There is also a category of access-to-courts claims that is forward-looking, in which plaintiffs allege that "systematic official action frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time." *Christopher v. Harbury*, 536 U.S. 403, 413 (2002).

injury'—that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit."[47] The underlying claim must be described well enough to demonstrate that it is "more than hope," and the complaint must set out the "lost remedy."[48]

To the extent that Washington is attempting to allege an access-to-courts claim against Myers, he has not done so.  The bulk of Washington's amended complaint concerns a civil case filed in the United States District Court for the Western District of Pennsylvania: *Washington v. Gilmore*, number 2:18-cv-1558. Washington alleges that, due to Myers' delay or destruction of his legal mail, the Western District did not receive his brief in opposition to a motion for summary judgment, his counterstatement of material facts, and a supporting "affidavit/declaration" that he prepared and mailed (or attempted to mail) from SCI Rockview in December 2021.[49]

However, review of the docket in *Washington v. Gilmore* conclusively establishes that, even if Washington's allegations regarding Myers' conduct are taken as true, Washington did not lose a chance to pursue that civil case.  When the Western District did not receive Washington's Rule 56 opposition documents, it issued a show-cause order to Washington on April 6, 2022, warning him that the

---

[47] *Monroe*, 536 F.3d at 205 (quoting *Christopher*, 536 U.S. at 415).
[48] *See Christopher*, 536 U.S. at 416-17.
[49] *See* Doc. 11 ¶¶ 18-27.

case would be dismissed for failure to prosecute if he did not submit his Rule 56 response by April 27, 2022.[50]  When Washington failed to respond to that order (possibly due to a mailing error by the Western District),[51] the court dismissed the case pursuant to Federal Rule of Civil Procedure 41(b) for failure to prosecute.[52]

Nevertheless, when Washington subsequently moved to reopen the case, the court granted that motion, vacated its prior dismissal, and gave Washington another opportunity (and a month-long extension) to file his Rule 56 response.[53] Washington timely filed his summary judgment briefing,[54] and the court decided his case on the merits, granting summary judgment in defendants' favor.[55] Washington appealed that decision, and the United States Court of Appeals for the Third Circuit affirmed the district court.[56]  Consequently, Washington has not stated, and cannot state, that he lost an opportunity to pursue an underlying, nonfrivolous claim.  So if Washington is raising an access-to-courts claim in his amended complaint, it too must be dismissed under Section 1915A(b)(1).

### D.    Leave to Amend

Generally, "plaintiffs who file complaints subject to dismissal under [the Prison Litigation Reform Act of 1995] should receive leave to amend unless

---

[50]   *See Washington v. Gilmore*, No. 2:18-cv-1558, Doc. 124 (W.D. Pa. Apr. 6, 2022).
[51]   *See id.*, Doc. 134 at 1-2.
[52]   *See id.*, Doc. 125.
[53]   *See id.*, Doc. 134.
[54]   *See id.*, Docs. 135, 136, 138.
[55]   *See id.*, Docs., 146, 147.
[56]   *See id.*, Docs. 150, 158.

amendment would be inequitable or futile."[57]  Washington will be granted limited leave to amend in the event that he can plead facts that would plausibly state a First Amendment retaliation claim against Myers.  Leave to amend will be denied with respect to his conditions-of-confinement claim, as he has failed to cure deficiencies even after "amendments previously allowed."[58]  Likewise, Washington's access-to-courts claim will be dismissed with prejudice, as no amendment could cure the fact that Washington did not lose the chance to pursue an underlying claim.

If Washington chooses to file a second amended complaint in conformity with this Memorandum, it should be a stand-alone document, complete in itself and without reference to any previous pleadings.  The second amended complaint should set forth Washington's retaliation claim in short, concise, and plain statements, and in sequentially numbered paragraphs.  Washington must leave one-inch margins on all four sides of his pleading.[59]  He *may not* include claims that have been dismissed with prejudice.  Washington must also specify the offending actions taken by a particular defendant, sign the second amended complaint, and indicate the nature of the relief sought.  Failure to comply with these instructions will result in the Court striking the amended pleading.  If Washington does not file

---

[57]   *Grayson*, 293 F.3d at 114.

[58]   *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (concluding that, where inmate plaintiff "has already had two chances to tell his story," providing "further leave to amend would be futile").

[59]   *See* LOCAL RULE OF COURT 5.1

a second amended complaint, the Court will dismiss the retaliation claim with prejudice and close this case.

## IV.   CONCLUSION

Based on the foregoing, the Court will dismiss Washington's amended complaint pursuant to 28 U.S.C. § 1915A(b)(1) because it fails to state a claim upon which relief may be granted.  Washington, if he is able, may file a second amended complaint concerning his First Amendment retaliation claim against Myers only.  No further leave to amend shall be granted.  An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge