# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JEROME JUNIOR WASHINGTON,

    Plaintiff,

    v.

LIEUTENANT MYERS,

    Defendant.

No. 4:22-CV-01858

(Chief Judge Brann)

## MEMORANDUM OPINION

### OCTOBER 13, 2023

Plaintiff Jerome Junior Washington, a serial *pro se* litigant in this Court, filed the instant Section 1983[1] lawsuit while incarcerated at the State Correctional Institution, Rockview (SCI Rockview). Washington's initial complaint was dismissed for failure to state a claim. He was given leave to amend. Washington's amended complaint likewise failed to state a claim for relief, so the Court again dismissed his case under 28 U.S.C. § 1915A(b)(1) but, erring on the side of caution, gave him one final opportunity to amend his retaliation claim. Washington filed a second amended complaint, which fails to comply with the Court's explicit directions and does not cure the deficiencies previously identified. Accordingly, this case will be dismissed with prejudice.

---

[1] 42 U.S.C. § 1983. Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

## I.      BACKGROUND

At the time Washington filed his complaint, he was incarcerated at SCI Rockview.  He is currently incarcerated at SCI Forest.[2]  As noted above, Washington is a serial *pro se* litigant who has inundated the federal courts with scores of civil rights cases that are often dismissed or fail on the merits.

In this case, Washington's original complaint asserted five constitutional tort claims against defendant Lieutenant Myers, a corrections officer at SCI Rockview.[3] As best the Court could discern, Washington was attempting to assert two Eighth Amendment conditions-of-confinement claims, two Fourteenth Amendment deprivation-of-property claims, and a First Amendment retaliation claim.[4]

The Court screened and dismissed Washington's complaint pursuant to 28 U.S.C. § 1915A.[5]  Washington's first conditions-of-confinement claim (which involved spending a night without a mattress or bedroll) and his property-deprivations claims were dismissed with prejudice under Section 1915A(b)(1), as they were legally insufficient and could not be cured by amendment.[6]  The Court granted Washington leave to amend with regard to his second conditions-of-

---

[2]   *See* Doc. 16 ¶ 6.
[3]   Washington also sued "Superintendent Salamon," the superintendent of SCI Rockview, but
      failed to include any allegations establishing Salamon's personal involvement in the purported
      constitutional violations.  *See* Doc. 1 at 2; Doc. 9 at 6-7.  Accordingly, the claims against
      Salamon were dismissed under Section 1915A(b)(1).  *See* Doc. 9 at 7.  Washington does not
      name Salamon in his second amended complaint.  *See generally* Doc. 16.
[4]   *See* Doc. 9 at 4-6.
[5]   *See generally* Docs. 9, 10.
[6]   *See* Doc. 9 at 8-9, 10-11, 13, 14.

confinement claim (concerning noisy conditions in the BMU) and his retaliation claim.[7]

Washington filed an amended complaint,[8] which the Court again screened pursuant to Section 1915A.[9]  Liberally construed, Washington's first amended complaint reasserted an Eighth Amendment conditions-of-confinement claim and a First Amendment retaliation claim.[10]  It additionally appeared to raise a new First and Fourteenth Amendment access-to-courts claim.[11]

The Court first examined and dismissed the conditions-of-confinement claim, finding that Washington had failed to plausibly plead both the objective and subjective elements of such a claim.[12]  That is, Washington failed to allege a sufficiently serious deprivation, and he failed to plead that Myers was deliberately indifferent to unconstitutional conditions.[13]  This time, the Court dismissed the conditions-of-confinement claim with prejudice, as Washington had failed to cure deficiencies after amendments previously allowed.[14]

The Court then reviewed Washington's retaliation claim.  That claim, however, was "hopelessly confused" and nearly impossible to follow, as there was

---

[7]  *See id.* at 13-14.
[8]  *See generally* Doc. 11.
[9]  *See generally* Docs. 14, 15.
[10]  *See* Doc. 14 at 5 (citing Doc. 11 ¶¶ 15-16).
[11]  *See id.*
[12]  *See id.* at 7.
[13]  *See id.*
[14]  *See id.* at 13.

no ascertainable connection between the various protected activities and the numerous adverse actions alleged.[15]  At bottom, Washington's first amended complaint failed to plausibly plead any sort of causal connection between a protected activity and a cognizable adverse action by Myers, so the retaliation claim again had to be dismissed.[16]  Erring on the side of caution, the Court gave Washington one final opportunity to replead his retaliation claim.[17]

The Court also liberally construed Washington's first amended complaint as raising an access-to-courts claim.[18]  After thorough analysis, that claim was dismissed with prejudice, as Washington had not, and could not, state that he had lost the opportunity to pursue an underlying, nonfrivolous claim.[19]

Washington was given explicit instructions regarding his second amended complaint.  The Court admonished that, if he chose to replead his retaliation claim, the second amended complaint must be complete in itself without reference to any previous pleadings, must specify the offending actions taken by Myers, and must omit any claims that had been dismissed with prejudice.[20]  Notably, leave to amend was granted only with respect to the retaliation claim against Myers.[21]

---

[15]   *See id.* at 8-10.
[16]   *See id.* at 10.
[17]   *See id.* at 13.
[18]   *See id.* at 10.
[19]   *See id.* at 10-12.
[20]   *See id.* at 13.
[21]   *See id.* at 14.

Washington filed his second amended complaint in August 2023.[22]  Because that pleading also fails to state a claim for relief, the Court will dismiss this case with prejudice pursuant to 28 U.S.C. § 1915A(b)(1).

## II.   STANDARDS OF REVIEW

Courts are statutorily obligated to review, "as soon as practicable," *pro se* prisoner complaints targeting governmental entities, officers, or employees.[23]  One basis for dismissal at the screening stage is if the complaint "fails to state a claim upon which relief may be granted[.]"[24]  This language closely tracks Federal Rule of Civil Procedure 12(b)(6).  Accordingly, courts apply the same standard to screening a *pro se* prisoner complaint for sufficiency under Section 1915A(b)(1) as they utilize when resolving a motion to dismiss under Rule 12(b)(6).[25]

In deciding a Rule 12(b)(6) motion to dismiss, courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[26]  The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff.[27]  In addition to the facts alleged on the face of

---

[22]   *See generally* Doc. 16.

[23]   *See* 28 U.S.C. § 1915A(a).

[24]   *Id.* § 1915A(b)(1).

[25]   *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 109-10 & n.11 (3d Cir. 2002); *O'Brien v. U.S. Fed. Gov't*, 763 F. App'x 157, 159 & n.5 (3d Cir. 2019) (per curiam) (nonprecedential); *cf. Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000).

[26]   *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996).

[27]   *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008).

the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.[28]

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry.[29]  At step one, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim."[30]  Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded.[31]  Finally, the court must review the presumed-truthful allegations "and then determine whether they plausibly give rise to an entitlement to relief."[32] Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[33]

Because Washington proceeds *pro se*, his pleadings are to be liberally construed and his second amended complaint, "however inartfully pleaded, must

---

[28]   *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

[29]   *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotation marks omitted) (footnote omitted).

[30]   *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (alterations in original)).

[31]   *Id.* (quoting *Iqbal*, 556 U.S. at 679).

[32]   *Id.* (quoting *Iqbal*, 556 U.S. at 679).

[33]   *Iqbal*, 556 U.S. at 681.

be held to less stringent standards than formal pleadings drafted by lawyers[.]"[34]

This is particularly true when the *pro se* litigant, like Washington, is incarcerated.[35]

## III.  DISCUSSION

Washington's second amended complaint violates the explicit directions provided in this Court's prior Memorandum.  He attempts to reassert claims regarding access to courts, deprivation of property, and conditions of confinement,[36] even though these claims were dismissed with prejudice.  As the Court previously explained (and Washington is aware),[37] the Court will not entertain such claims in the second amended complaint.

Washington also reasserts his First Amendment retaliation claim against Myers—the only claim for which this Court granted leave to amend.[38] Nevertheless, Washington again fails to state such a claim despite this Court repeatedly explaining how and why he has failed to properly allege retaliation in

---

[34] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citations omitted).

[35] *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (citation omitted).

[36] *See, e.g.*, Doc. 16 ¶¶ 8-11, 23-24, 28; *see id.* ¶ 25 (citing First, Fourth, Sixth, Eighth, and Fourteenth Amendments).  Nowhere in Washington's second amended complaint does he discuss a Sixth Amendment claim, nor would such a claim likely be cognizable in a Section 1983 action.  Washington also does not state a Fourth Amendment claim, as inmates do not have Fourth Amendment protections concerning searches and seizures of property within the prison walls.  *See Hudson v. Palmer*, 468 U.S. 517, 530 (1984); *Doe v. Delie*, 257 F.3d 309, 316 (3d Cir. 2001) ("The *Hudson* court confirmed that a Fourth Amendment right to be free from unreasonable searches and seizures is inconsistent with incarceration."); *see also Humphrey v. Sec'y Pa. Dep't of Corr.*, 712 F. App'x 122, 125 (3d Cir. 2017) (nonprecedential) (holding that seizure of legal materials did not state a cognizable Fourth Amendment claim) (citing *Hudson*, 468 U.S. at 536).

[37] *See* Doc. 14 at 13, 14.

[38] *See id.* at 14 ("Washington, if he is able, may file a second amended complaint concerning his First Amendment retaliation claim against Myers only.").

prior iterations of his pleadings.[39]  The Court will once more explain why
Washington has failed to plausibly state a retaliation claim.

### A.     First Amendment Retaliation

To state a *prima facie* First Amendment retaliation claim, a prisoner must
allege that (1) "he was engaged in constitutionally protected conduct," (2) he
suffered an "adverse action" by prison officials sufficient to deter a person of
ordinary firmness from exercising his First Amendment rights, and (3) the inmate's
protected conduct was a "substantial or motivating factor" in the prison officials'
decision to take the adverse action.[40]

Washington's retaliation claim in his second amended complaint is even
more vague and disjointed than in his first amended complaint.  He repeatedly, and
in conclusory fashion, states that Myers retaliated against him, but he never
specifies what protected conduct was the basis for the alleged retaliation, nor does
he plausibly plead causation.[41]

Washington seems to allege that the primary retaliatory conduct taken by
Myers was that he interfered with the mailing of legal documents for a civil case
filed in the United States District Court for the Western District of Pennsylvania:

---

[39]  *See* Doc. 9 at 12-13; Doc. 14 at 8-10.

[40]  *Wisniewski*, 857 F.3d at 156 (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001));
*Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (quoting *Rauser*, 241 F.3d at 333).

[41]  Washington also commingles his claims, asserting that Myers' purported adverse action denied
him access to the courts.  *See, e.g.*, Doc. 16 ¶¶ 8, 11.  That claim, however, has already been
dismissed with prejudice.  *See* Doc. 14 at 10-13.

*Washington v. Gilmore*, number 2:18-cv-1558, which targeted SCI Greene

officials.[42]  Notably, although Washington asserts that Myers retaliated against him

by interfering with legal mail related to this civil case, he never expressly alleges

that the retaliatory conduct was taken *because of* the Western District litigation.

Moreover, *Washington v. Gilmore* does not name Myers (or any other SCI

Rockview official) as a defendant, nor does Washington provide any reason why

Myers would interfere with that case, much less retaliate against Washington for

filing or prosecuting it.[43]

   In another section of his second amended complaint (the portion concerning

conditions of confinement), Washington discusses grievances that Myers allegedly

handled and dismissed in 2021.[44]  These allegations do not establish the elements

of a retaliation claim, either.  While filing a grievance is protected conduct,[45]

Washington does not state when the grievances were filed, against whom they

lodged, when they were rejected or dismissed, or why such grievances would

motivate Myers to retaliate against him.  Courts in this district have consistently

---

[42]  *See id.* ¶¶ 8, 9.  For purposes of the instant Section 1915A screening, the Court will assume that such interference constitutes an adverse action for a retaliation claim.

[43]  For the first time in this litigation, Washington discusses other civil cases and appeals in which he alleges Myers interfered.  The Court will not entertain new access-to-courts allegations that were not raised in Washington's initial or amended complaint.  Washington's access-to-courts claim, in fact, was dismissed with prejudice.  Furthermore, the new allegations appear to facially implicate a statute of limitations bar.  *See, e.g.*, Doc. 16 ¶ 17 (discussing an August 13, 2020 incident).

[44]  *See* Doc. 16 ¶ 22.

[45]  *See Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016) (citation omitted).

rejected retaliation claims against one defendant based on a grievance filed against a different defendant or prison official,[46] as such conclusory allegations do not suffice to show causation or knowledge of the protected conduct.

Insofar as Washington may be claiming that he filed grievances against Myers and they were rejected in retaliation *by* Myers,[47] such a claim also fails. First, the allegation is implausible, as Pennsylvania Department of Corrections inmate grievance policy DC-ADM 804 specifically precludes prison officials from reviewing or adjudicating grievances if they are named or involved in the at-issue grievance.[48] Second, rejection or dismissal of a grievance—which happens frequently in prisons and is usually the first step in mandatory administrative exhaustion of a civil rights claim—is not an actionable adverse action for retaliation purposes.[49]

---

[46] *See, e.g.*, *Kendrick v. Hann*, No. 1:19-cv-01642, 2021 WL 2914986, at *9 (M.D. Pa. July 12, 2021); *Murray v. Smithbower*, No. 1:17-cv-0127, 2021 WL 1103524, at *7 (M.D. Pa. Mar. 23, 2021); *Horan v. Collins*, No. 1:13-cv-00140, 2016 WL 5030468, at *6 (M.D. Pa. Aug. 8, 2016); *Victor v. Lawler*, No. 3:07-cv-2058, 2010 WL 5014555, at *5 (M.D. Pa. Dec. 3, 2010); *Royster v. Beard*, No. 1:06-cv-0842, 2008 WL 2914516, at *6 (M.D. Pa. July 24, 2008) (concluding that plaintiff failed to satisfy the causal connection for his retaliation claim against defendant because previous grievance did not name or impact that defendant).

[47] Washington's allegations are confusing, stating that "Myers confirm[ed that] Myers was going to dismiss both inmates' grievances, since Plaintiff and inmate Jackson was [sic] filing grievances against Defendant Lt. Myers who answered Myers' grievance against Myers." Doc. 16 ¶ 22.

[48] *See* COMMW. OF PA., PA. DEP'T OF CORR., *Policy Statement* DC-ADM 804 § 1(C)(3) (2015), available at https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/804%20 Inmate%20Grievances.pdf (last visited Oct. 12, 2023).

[49] *See Owens v. Coleman*, 629 F. App'x 163, 167 (3d Cir. 2015) (nonprecedential) (citing *Burgos v. Canino*, 641 F. Supp. 2d 443, 455 (E.D. Pa. 2009), *aff'd per curiam*, 358 F. App'x 302, 306-07 (3d Cir. 2009)); *Porter v. Allegheny County*, No. 20-cv-1588, 2023 WL 2586037, at *6 (W.D. Pa. Mar. 21, 2023); *Nifas v. Coleman*, No. 10-cv-1486, 2012 WL 707063, at *7 (W.D.

In sum, Washington has once again failed to state a First Amendment retaliation claim against Myers.  His allegations do not specify the protected conduct for which he claims he was retaliated, he fails to plausibly plead any causal connection to Myers' purported adverse conduct, and at least some of his allegations do not even implicate an actionable adverse action.  This claim, therefore, must be dismissed again, and dismissal will be with prejudice.

### B.    Intentional Infliction of Emotional Distress

To the extent that Washington is attempting to assert a state-law claim of intentional infliction of emotional distress in one paragraph of his second amended complaint,[50] he fails to plausibly state such a claim.

The Pennsylvania Supreme Court has not yet explicitly recognized the tort of intentional infliction of emotional distress (IIED).[51]  The Third Circuit has predicted that the state's high court will ultimately adopt the Restatement (Second) of Torts' formulation.[52]  A claim of IIED requires conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of

---

Pa. Feb. 9, 2012); *Alexander v. Forr*, No. 3:04-cv-0370, 2006 WL 2796412, at *3 n.4 (M.D. Pa. Sept. 27, 2006).

[50] *See* Doc. 16 ¶ 19 ("The Plaintiff suffered the infliction of mental anguish, & emotional psychiatric/psychological emotional distress as result [sic] of Defendant Myer[s'] intangible hand's [sic] on legal mail. [sic] that could had [sic] been handle; [sic] hereby BMU C.O.'s / Correctional Official to sign Plaintiff [sic] outgoing legal mail cash slip under the Fair Housing Act as well as access to the Clerk of Court."); *see also id.* ¶ 4 (mentioning supplemental jurisdiction for unspecified "state law" claims).

[51] *See Taylor v. Albert Einstein Med. Ctr.*, 754 A.2d 650, 652 (Pa. 2000).

[52] *Williams v. Guzzardi*, 875 F.2d 46, 50-51 (3d Cir. 1989); *see also Mills v. City of Harrisburg*, 589 F. Supp. 2d 544, 558 n.13 (M.D. Pa. 2008) (citing *Taylor*, 754 A.2d at 652).

decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."[53]

Washington's allegations regarding Myers' purported interference with legal mail or denial of grievances do not come close to constituting extremely "outrageous" or "atrocious" conduct necessary to maintain an IIED claim under Pennsylvania law.  Thus, if Washington is asserting an IIED claim in his second amended complaint, it too must be dismissed with prejudice pursuant to Section 1915A(b)(1).  Granting leave to amend would be futile, as none of the allegations against Myers in any of Washington's pleadings come close to implicating IIED.

### C.    Leave to Amend

Generally, "plaintiffs who file complaints subject to dismissal under [the Prison Litigation Reform Act of 1995] should receive leave to amend unless amendment would be inequitable or futile."[54]  Leave to amend will be denied as futile because Washington has repeatedly failed to cure deficiencies after "amendments previously allowed."[55]  Washington has been given multiple opportunities to amend his pleadings, along with explicit direction and guidance for amendment, yet he has still failed to plausibly state a claim upon which relief

---

[53]  *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998) (quoting *Buczek v. First Nat'l Bank of Mifflintown*, 531 A.2d 1122, 1125 (Pa. Super. Ct. 1987)).

[54]  *Grayson*, 293 F.3d at 114.

[55]  *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (concluding that, where inmate plaintiff "has already had two chances to tell his story," providing "further leave to amend would be futile").

may be granted.  And, although Washington is acting *pro se*, he is no rookie litigant.  Washington has filed and litigated dozens of civil rights cases in federal court, as well as numerous appeals in the Third Circuit.  He is, therefore, quite capable of understanding pleading standards and court directions.

## IV.    CONCLUSION

Based on the foregoing, the Court will dismiss Washington's second amended complaint pursuant to 28 U.S.C. § 1915A(b)(1) because it fails to state a claim upon which relief may be granted.  Dismissal will be with prejudice, as Washington has repeatedly tried and failed to state a claim for relief.

An appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge